IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Connie J. Spence, | ) | |
| | ) | |
| Appellant, | ) | C/A No. 2:05-103-18 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| Joseph S. Knecht & Co., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

This action is before the court on appeal from the United States Bankruptcy Court, District of South Carolina. This court exercises appellate jurisdiction in this matter pursuant to 28 U.S.C. § 158(a) (West 1999). Appellant Connie Spence contends the bankruptcy court erred in awarding post-petition attorneys' fees to appellee Joseph S. Knecht & Co.

## I.   BACKGROUND

Appellant commenced Chapter 11 bankruptcy proceedings in September 2003. Appellee filed a proof of claim on January 28, 2004 for $54,592.93 in accounting services provided to Kymo Development, LLC and Port City Property Management, LLC ("LLCs"). In a September 8, 2004 order ("Claim Order"), the bankruptcy court allowed appellee's claim as a general unsecured claim via a "veil piercing" theory. The court concluded that appellant-debtor treated the LLCs as her alter-egos and therefore should be personally liable for the debts of the entities. In the same order, the court also determined that appellee was entitled to reimbursement for legal fees incurred while trying to collect on the amounts owed, and conducted a hearing on September 16, 2004 to determine that fee. In a November 5, 2004 order ("Fee Order") the bankruptcy court

permitted appellee to include $16,659.99 in legal fees and costs in its general unsecured claim. Appellant appeals the bankruptcy court's conclusion that attorneys' fees may be awarded in this unique situation.

## II.    STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 8013 provides that:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013 (West 2000). Accordingly, appellate review by this court of findings of fact of the bankruptcy court is pursuant to the clearly erroneous standard. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). The clearly erroneous rule will not protect findings based on the application of incorrect legal standards or made in disregard of applicable legal standards. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir. 1984). The bankruptcy court's conclusions of law are reviewed de novo. See Traveler's Ins. Co. v. Bryson Properties, XVIII, 961 F.2d 496, 499 (4th Cir.), cert. denied, 506 U.S. 866 (1992).

## III.    ANALYSIS

Appellant queries "whether an unsecured creditor of a bankrupt estate is entitled to post-petition attorney's fees based on a pre-petition obligation." (App.'s Br. at 1.) The "pre-petition obligation" refers to appellee's engagement letter which set forth the

terms of service:

> In the event it becomes necessary to employ an attorney to collect any sums under this agreement, you [LLCs] agree to pay all attorney's fees and all other costs of collection we incur, whether suit is brought or not, including trial, appeals, bankruptcy proceedings or any other administrative action.

Fee Order at 4.  Neither LLC signed the letter; however, the bankruptcy court concluded the letter memorialized the agreement between the parties.  Alternatively, the court held the LLCs assented to the terms of the agreement by their subsequent conduct. Id. at 4-5.  Appellant does not challenge this conclusion.

Appellant advances four reasons why attorneys' fees should not be awarded.

### a.     Section 506(b)

Appellant contends §506(b) of the bankruptcy code bars recovery of attorney's fees in this context.  The relevant provision of the code provides:

> To the extent that an allowable secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which the claim arose.

11 U.S.C. § 506(b).  The court's research has not found a Fourth Circuit or district court case in this jurisdiction addressing whether § 506(b) permits an unsecured creditor's claim for post-petition attorneys' fees.  Appellant contends this circuit would follow the majority rule, which holds § 506(b) permits only oversecured creditors to collect such fees.  See In re The New Power Company, 313 B.R. 496, 506-07 (Bankr. N.D. Ga. 2004) (noting majority rule reasons that "if Congress intended for unsecured creditors to receive post-petition attorneys' fees, it would have said so as explicitly as it authorized

oversecured creditors to collect such fees in § 506(b)"). A "significant minority" of courts hold that § 506(b) does not prevent a unsecured creditor from recovering these fees. See id., 313 B.R. at 507.

At least two bankruptcy court opinions in this circuit have followed the majority's reasoning. In both In Re Saunders, 130 B.R. 208 (Bankr. W.D. Va. 1991) and In re Smith, 206 B.R. 113 (Bankr. D. Md. 1997), unsecured and undersecured creditors unsuccessfully tried to add the attorneys' fees on to their overall claims. See Smith, 206 B.R. at 115 ("generally, attorneys' fees for representation of an unsecured creditor incurred subsequent to the filing of the bankruptcy petition are not allowable as a part of the claim"); Saunders, 130 B.R. at 210 ("section 506(b) entitles a secured creditor to recover reasonable attorneys' fees as part of a claim to the extent" the creditor is oversecured").[1]

Nevertheless, this court shares the bankruptcy court's conclusion that the minority interpretation is more reasonable in the circumstance at bar. It is questionable whether § 506(b) applies to unsecured claims at all. As the bankruptcy court noted,

> Although 11 U.S.C. §506(b) only allows an oversecured creditor to recover fees and costs, this provision merely gives such a creditor a right to recover those fees and costs from its collateral ahead of unsecured creditors. It does not prohibit an unsecured creditor from having an allowed unsecured claim for its fees and costs.

Fee Order at 5. This court finds more persuasive the minority rationale recently

---

[1] Numerous bankruptcy court decisions in this circuit require the creditor to be oversecured in order to recover post-petition fees through §506(b). See, e.g., In Re Ward, 190 B.R. 242, 245 (Bankr. D. Md. 1995); In Re Tate, 253 B.R. 653, 664 (Bankr. W.D. N.C. 2000). Using these cases in the present circumstance assumes that § 506 is the only way a creditor can recover such fees.

explained in New Power and In Re Welzel 275 F.3d 1308 (11th Cir. 2001). As both courts note, § 502 provides guidelines for determining whether a claim is allowable. See New Power, 313 B.R. at 507-10; Welzel, 275 F.3d at 1317.  Section 506 addresses the subsequent, more narrow question of attorney's fees within secured claims.  The existence of a claim, as is the question before this court, is addressed by § 502.  See Welzel, 275 F.3d at 1317 ("§ 506(b) is meant not to displace the general instructions laid down in § 502, but to be read together with § 502 in a complementary manner.")  As the bankruptcy court noted, "there is no general exception to allowance of a claim for post-petition attorney's fees in § 502." Fee Order at 5.

Therefore, this court concludes § 506(b) does not bar appellee's claim for attorneys' fees.

**b.**     ***Timbers of Inwood Forest***

Appellant contends the Supreme Court's interpretation of § 506(b) in United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Inc., 484 U.S. 365 (1988) prohibits unsecured creditors' recovery of post-petition attorneys' fees.  In Timbers, the Court held that a creditor is only entitled to be paid post-petition interest out of its "security cushion" (the extent to which the value of its collateral exceeded its entire claim).  Appellant concludes that since § 506(b) addresses post-petition requests for interest and fees identically, Timbers' natural implication would prohibit unsecured creditors' recovery of fees.

As the bankruptcy judge noted, appellant ignores the Court's justification for its holding.  Timbers rests as much on § 502 as on § 506(b):"[s]ince [§ 506(b)] permits post-

petition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing post-petition interest" found in § 502(b)(2). Timbers, 484 U.S. at 365. Section 502(b)(2) specifically disallows claims for unmatured interest.[2] However, "there is no general exception to allowance of a claim for post-petition attorneys' fees in § 502." Report at 5; see also New Power, 313 B.R. at 510 (finding "no exception within § 502(b) which would prevent the collection of attorneys' fees by a creditor who has a valid nonbankruptcy right to do so"). Claims for post-petition interest and attorneys' fees are not equal in the eyes of the bankruptcy code. Therefore, this court concurs with the bankruptcy court's determination that Timbers does not apply to unsecured creditor's post-petition claims for attorneys' fees.[3]

    **c.**    **Sections 502(b) and 502(c)**

Citing § 502(b), appellant maintains the claim should be barred because its exact amount was not calculated when the petition was filed. See § 502(b) ("the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except" for the disallowances listed in § 502(b)(2)). Naturally, the exact amount of legal fees incurred during the bankruptcy proceedings was not known until the process was completed. Appellant's reading would effectively bar any pre-petition agreement providing

---

[2] [T]he court . . . shall allow such claim in such amount, except to the extent that . . . such claim is for unmatured interest. 11 U.S.C. § 502(b)(2).

[3] The courts that have adopted the majority interpretation of § 506(b) generally subscribe to appellant's interpretation of Timbers. For the reasons described above, the court declines to join them.

reimbursement for post-petition legal fees. However, the bankruptcy code includes a provision for estimating "contingent or unliquidated claim[s]" when the determination of the claim would unduly delay the administration of the case. See § 502(c)(1). Appellee's fee claim did not mature until the bankruptcy court pierced the LLC's veil, at which point liability attached to appellant. The bankruptcy court then held a hearing to determine the amount of the fee claim. The court finds this process satisfies the strictures of § 502(b) and (c).

Appellant raises the related equitable argument that appellee did not give sufficient notice of its intentions to seek the fees. The facts suggest otherwise. Appellant was on notice of the possibility of the fee claim, since the agreement between appellee and the LLCs includes the fee arrangement. The fact that appellant was the "alter-ego" of the LLCs only undermines the lack of notice argument.

### d.      Policy Ramifications

Finally, appellant urges this court to consider the precedential force of allowing post-petition attorneys' fees in future cases. Appellant raises the specter that this result, applied to other cases, could unfairly consume an estate to the prejudice of other unsecured creditors. This concern does not apply to the case at bar because debtor plans to pay all unsecured claims in full. Report at 5-6. Moreover, the balance of equities favor appellee. Appellant effectively used appellee's services without paying for them, forcing appellee to incur costs in pursuit of payment. In the unlikely event a future case with identical facts presents itself, the court has no qualms if it is resolved in a similar manner. This court limits its decision to the unique set of facts involved in this case.

**IV.    CONCLUSION**

For the reasons stated above, it is therefore **ORDERED** that the bankruptcy court's Order is **AFFIRMED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 6, 2005**
**Charleston, South Carolina**

8